Defendant-appellant, Demetrius Poole, appeals the decision of the Butler County Court of Common Pleas, Juvenile Division to terminate his parental rights and grant permanent custody of his son, Alexander Fagaly ("Alexander"), to the Butler County Children Services Board ("BCCSB"). We affirm the decision of the trial court.
On August 30, 1996, BCCSB filed a complaint alleging that Alexander, then one month old, was an abused, neglected and dependent child. BCCSB stated in its report that Alexander was suffering from a "failure to thrive" due to "sociological" and not "organic" reasons. The complaint alleged that Alexander's mother, Christina Archer, and her boyfriend, John Fagaly, (who signed the birth certificate), had "not demonstrated responsibility in caring for [Alexander]." On the same day, the juvenile court issued anex parte order giving temporary custody of Alexander to BCCSB pending an investigation. On October 2, 1996, Archer agreed to a finding that Alexander was neglected and dependent and BCCSB withdrew the allegation of abuse.
Subsequently, appellant became aware that he may be Alexander's biological father. After contacting BCCSB, the juvenile court ordered DNA blood tests to determine parentage and the result was a 99.98 percent probability that appellant was Alexander's father. At a January 19, 1997 hearing, based on the DNA test results, appellant admitted parentage and was found by the juvenile court to be the father. The juvenile court ordered supervised visitation for appellant which was subsequently modified to unsupervised visitation. Appellant also attended Development of Living Skills ("DLS") classes.
On February 17, 1998, BCCSB moved for permanent custody of Alexander. The guardian ad litem supported the motion. After notice and a hearing, the trial court awarded permanent custody to BCCSB. From this decision, appellant filed a timely notice of appeal and presents one assignment of error for our review:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT/FATHER WHEN IT TERMINATED HIS PARENTAL RIGHTS.
We begin with the principle that natural parents have a constitutionally protected liberty interest in the care and custody of their children. Santosky v. Kramer (1982),455 U.S. 745, 102 S.Ct. 1388. A motion by the state to terminate parental rights "seeks not merely to infringe that fundamental liberty interest, but to end it." Id. at 759, 102 S.Ct. at 1397. In order to satisfy due process, the state is required to demonstrate by clear and convincing evidence that the statutory standards have been met. Id. at 769, 102 S.Ct. at 1403. "Clear and convincing evidence" requires that the proof "produced in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of syllabus.
When a state agency moves for permanent custody, the trial court is required to hold a hearing to determine "if it is the best interest of the child to permanently terminate parental rights and grant permanent custody to the agency that filed the motion." R.C. 2151.414(A) (1). In order to grant permanent custody to a state agency, the agency must demonstrate that any of the following apply:
 (1) The child is not abandoned or orphaned and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;
 (2) The child is abandoned and the parents cannot be located;
 (3) The child is orphaned and there are no relatives of the child who are able to take permanent custody.
R.C. 2151.414(B).
At a permanent custody hearing, the trial court shall consider all factors relevant to the child's best interest. R.C.2151.414(D). The factors include, but are not limited to:
 (1) The interaction and interrelationship of the child with his parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child * * *;
 (4) The child's need for a legally secure permanent placement and whether the type of placement can be achieved without a grant of permanent custody to the agency[.]
 Id.
Alexander has been in the temporary custody of BCCSB since he was three weeks old and, at the time of the final hearing, he was two years of age. R.C. 2151.414(D) (3). The testimony indicates Alexander has bonded with his foster family and they intend to adopt him. The August 6, 1998 report of the guardian ad litem
"notes that [Alexander] is very strongly bonded to his foster family, with whom he has been placed since he was a young infant." The guardian ad litem's report also indicates that "[t]here is a reasonable probability of adoption and the grant of permanent custody would facilitate that adoption." The guardian ad litem
felt that Alexander had not formed a strong bond with appellant and would not be harmed by a grant of permanent custody to BCCSB. The guardian ad litem also questioned the commitment of appellant's family to helping appellant raise Alexander:
 [Appellant's] father and sister testified to their willingness to help [appellant] raise the child, but his father works two jobs and apparently is not home a great deal, and his twenty-two year old sister, who has plans to get her GED and begin a career as a nurse's aide, testified that she has never really even baby-sat Alexander and has no children of her own. Noticeably absent from the family is that of Mr. Poole's mother, Alexander's grandmother, or an unknown cousin who is according to Mr. Poole will be responsible for a great deal of Alex's day-to-day care. Karen Laveneder from DLS expressed surprise upon hearing that Demetrius' family were interested in helping him raise Alexander, as this was inconsistent with everything she was aware of on her weekly visits at the Poole residence, and certainly inconsistent with what Demetrius' father had expressed to her in the recent past. Also of concern was her statement that Demetrius appeared to be functioning better than the rest of the family, which is not encouraging about the type of help he would have from the rest of the family. Demetrius is unable to express how long this familial arrangement would last as they had not discussed it. As a result, this Guardian highly questions the commitment this family really has to helping Demetrius raise Alexander on a long term basis.
We find that the record supports the guardian ad litem's conclusions. Considering all the relevant factors, we find that the record supports the trial court's conclusion that clear and convincing evidence supports granting permanent custody to BCCSB, and that granting permanent custody to BCCSB is in Alexander's best interest.
When granting permanent custody to a state agency, the trial court must also find that one of the factors enumerated in R.C.2151.414(E) exist. In re William S. (1996), 75 Ohio St.3d 95, syllabus.[1] The factors, in relevant part, are as follows:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parent utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 (9) The parent for any reason is unwilling to provide food, clothing, shelter, and any other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.
(12) Any other factor the court considers relevant.
R.C. 2151.414(E). If any of the factors apply, "the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent." Id.
Appellant has not been able to maintain employment for any significant length of time from the moment he admitted parentage until the final permanent custody hearing. The record does not indicate that appellant held a job for more than two months. At the time of the final hearing, appellant was working twenty-two hours a week (part-time) at a fast food restaurant for minimum wage. Previously, appellant worked at a "computer warehouse," for approximately two weeks but left that job due to transportation problems. Before that position, appellant worked at Savage Auto, but quit because of problems reconciling his schedule with his visitation. Before Savage Auto, appellant worked at McDonald's for approximately three weeks. He left that job because the Savage Auto job offered a higher wage. Before McDonalds, appellant worked at Ultra Clean Systems for two days, but quit because the supervisor was rude. Previously, appellant also worked at Frisch's Big Boy restaurant for two months. He left that position because, at the time, appellant was helping to care for his now ex-girlfriend's child.
Appellant admitted to having no specific job training. Appellant could not articulate how he would be able to provide the necessities of life for his child. He admitted he could not presently raise his child without the assistance of his family. However, as noted by the guardian ad litem, the future, long-term support of appellant's family is questionable. We recognize that appellant did not cause the trial court to initially place temporary custody of Alexander with BCCSB. Nevertheless, appellant has not shown an ability to presently financially support Alexander and has no savings. Perhaps more importantly, appellant has no definitive plan for the future in this regard. Karen Lavender, a "parent educator" coordinating the DLS program also testified about her concerns about appellant's employment.
Finally, the permanent custody hearing was continued from March 27, 1998 until July 18, 1998 to allow appellant to demonstrate progress. During that time, appellant did not show any meaningful progress with his employment. The reality is that Alexander has been in foster care for over two years and needs a permanent home. We find that the record supports the trial court's conclusion that Alexander cannot be placed with appellant within a reasonable time. The assignment of error is overruled.
Judgment affirmed.
YOUNG and VALEN, JJ., concur.
[1] When William S. was decided, R.C. 2151.414(E) included eight specific factors. R.C. was subsequently revised to include twelve factors. Factor twelve is "[any] other factor the court deems relevant." Thus, the practical importance of William S. has lessened.